UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

ROBIN ROBERTSON,
    Plaintiff,

 -vs-

Case No. 2:15-cv-13446-AC-MKM
Hon. Avern Cohn
Mag. Judge: Mona K. Majzoub
**DEMAND FOR JURY TRIAL**

PINNACLE ASSET GROUP, LLC,
REGENCY PARTNERS, LLC,
DIRECT CAPITAL ASSOCIATES, LLC,
PRG & ASSOCIATES, LLC,
HIGH POINT ASSET, INC.
JOHN DOES 1-8 and
JANE DOES 1-2,
    Defendants.

## FIRST AMENDED COMPLAINT & JURY DEMAND

*Robin Robertson states the following claims for relief:*

### Jurisdiction

1. This court has jurisdiction under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and 28 U.S.C. §§ 1331, 1337.

2. This Court may exercise supplemental jurisdiction over the related state-law claims arising out of the same nucleus of operative facts which give rise to the federal-law claims.

### Parties

3. The Plaintiff to this lawsuit is Robin Robertson, who resides in Wayne County,

Michigan.

4. The Defendants to this lawsuit are as follows:

    a. Pinnacle Asset Group, LLC ("Pinnacle") which is a foreign limited liability company doing business in Michigan.

    b. Regency Partners, LLC ("Regency"), which is a foreign limited liability company doing business in Michigan.

    c. Direct Capital Associates, LLC ("Direct Capital"), which is a foreign limited liability company doing business in Michigan.

    d. PRG & Associates, LLC ("PRG"), which is a foreign limited liability company doing business in Michigan.

    e. High Point Asset, Inc. ("High Point"), which is a foreign corporation doing business in Michigan.

    f. John Doe 1, who is an owner, operator and/or manager of Pinnacle.

    g. John Doe 2 ("Jonathan"), who identified himself to Mrs. Robertson as "Jonathan" and who is a debt collector for Pinnacle.

    h. John Doe 3, who is an owner, operator and/or manager of Regency.

    i. John Doe 4, who is an owner, operator and/or manager of Direct Capital.

    j. John Doe 5 ("Mr. Lopez" and/or "Mr. Gilbert"), who identified himself to Mrs. Robertson variously as "Omar Lopez" and "Dennis Gilbert" and

   who is a debt collector for Direct Capital.

k. John Doe 6 ("Mr. Marks"), who identified himself to Mrs. Robertson as "Paul Marks" and who is a debt collector for Direct Capital.

l. John Doe 7, who is an owner, operator and/or manager of PRG.

m. John Doe 8, who is an owner, operator and/or manager of High Point.

n. Jane Doe 1, who identified herself to Mrs. Robertson as "Karen Atwater" and who is a debt collector for PRG.

o. Jane Doe 2, who identified herself to Mrs. Robertson as "Felicia Thomas" and who is a debt collector for High Point.

## Venue

5. The transactions and occurrences which give rise to this action occurred in Wayne County.

6. Venue is proper in the Eastern District of Michigan.

## General Allegations as to Pinnacle

7. Some time prior to January 30, 2015, Pinnacle was engaged to collect a debt allegedly owed by Mrs. Robertson.

8. Alternatively, some time prior to January 30, 2015, Pinnacle purchased a debt allegedly owed by Mrs. Robertson.

9. At all relevant times, Pinnacle and its agents acted under the direction of John

Doe 1.

10. Upon information and belief, John Doe 1 established the policies, procedures and practices of Pinnacle in his capacity as an owner, operator and/or manager of Pinnacle.

11. On or about January 30, 2015, Pinnacle communicated with Mrs. Robertson for the first time.

12. That first communication was a telephone call to Mrs. Robertson by John Doe 2, who identified himself as "Jonathan" and who called Mrs. Robertson on behalf of PRG to collect an alleged debt from Mrs. Robertson.

13. Since January 30, 2015, Jonathan called on at least four other occasions to collect the alleged debt from Mrs. Robertson.

14. Each call by Jonathan was a prerecorded message to Mrs. Robertson.

15. Mrs. Robertson does not owe the alleged debt that Pinnacle sought to collect.

16. Mrs. Robertson never received any written statement from Pinnacle containing each of the following:

   a. the amount of the alleged debt;

   b. the name of the creditor to whom the alleged debt is owed;

   c. a statement that, unless Mrs. Robertson disputed the debt within thirty days of receiving the written statement, Pinnacle would assume the debt

        to be valid;

  d.    a statement that, if Mrs. Robertson disputed the debt in writing within thirty days of receiving the written statement, Pinnacle would obtain verification of the debt and mail the verification to Mrs. Robertson; and

  e.    a statement that, upon Mrs. Robertson's written request within thirty days of receiving the written statement, Pinnacle would provide the name of the original creditor, if different than the current creditor.

### General Allegations as to Regency

17. Some time prior to January 27, 2015, Regency was engaged to collect a debt allegedly owed by Mrs. Robertson.

18. Alternatively, some time prior to January 27, 2015, Regency purchased a debt allegedly owed by Mrs. Robertson.

19. At all relevant times, Regency and its agents acted under the direction of John Doe 3.

20. Upon information and belief, John Doe 3 established the policies, procedures and practices of Regency in his capacity as an owner, operator and/or manager of Regency.

21. On or about January 27, 2015, a representative of Regency telephoned both Mrs. Robertson's husband and Mrs. Robertson's daughter for the first time.

22. During Regency's telephone call to Mrs. Robertson's husband on or about January 27, 2015, a prerecorded message stated that Regency would be filing a complaint against Mrs. Robertson.

23. Since the January 27, 2015 telephone call, Mrs. Robertson's husband received at least one other telephone call from Regency that was virtually identical to the January 27, 2015 telephone call.

24. During Regency's telephone call to Mrs. Robertson's daughter on or about January 27, 2015, a prerecorded message stated that there was a "complaint in our office that requires immediate attention, press '1'".

25. Since the January 27, 2015 telephone call, Mrs. Robertson's daughter received at least three other telephone calls from Regency that were virtually identical to the January 27, 2015 telephone call.

26. Each of the telephone calls made by Regency to Mrs. Robertson's husband and Mrs. Robertson's daughter was made to their respective cell phones.

27. Mrs. Robertson does not owe the alleged debt that Regency sought to collect.

28. As of the date of this complaint, Mrs. Robertson has never received any written statement from Regency containing each of the following:

   a. the amount of the alleged debt;

   b. the name of the creditor to whom the alleged debt is owed;

    c.    a statement that, unless Mrs. Robertson disputed the debt within thirty days of receiving the written statement, Regency would assume the debt to be valid;

    d.    a statement that, if Mrs. Robertson disputed the debt in writing within thirty days of receiving the written statement, Regency would obtain verification of the debt and mail the verification to Mrs. Robertson; and

    e.    a statement that, upon Mrs. Robertson's written request within thirty days of receiving the written statement, Regency would provide the name of the original creditor, if different than the current creditor.

### General Allegations as to Direct Capital

29. Some time prior to November 7, 2014, Direct Capital was engaged to collect a debt allegedly owed by Mrs. Robertson.

30. Alternatively, some time prior to November 7, 2014, Direct Capital purchased a debt allegedly owed by Mrs. Robertson.

31. At all relevant times, Direct Capital and its agents acted under the direction of John Doe 4.

32. Upon information and belief, John Doe 4 established the policies, procedures and practices of Direct Capital in his capacity as an owner, operator and/or manager of Direct Capital.

33. On or about November 7, 2014, Direct Capital communicated with Mrs. Robertson for the first time.

34. That first communication was a telephone call by Direct Capital to collect an alleged debt from Mrs. Robertson.

35. On November 20, 2014, Mr. Lopez stated that he was calling from the "State Official's Office" and stated that he would dispatch a uniformed officer to Mrs. Robertson's home or place of employment to serve a "body attachment" upon her.

36. Upon information and belief, John Doe 5 uses "Omar Lopez" as a fictitious name in connection with his work with Direct Capital.

37. On or about December 18, 2014, Mr. Gilbert called Mrs. Robertson on behalf of Direct Capital to collect an alleged debt.

38. During the December 18, 2014 call, Mr. Gilbert threatened to serve legal paperwork upon Mrs. Robertson at her place of employment or last known address.

39. Upon information and belief, John Doe 5 uses "Dennis Gilbert" as a fictitious name in connection with his work with Direct Capital.

40. Upon information and belief, "Dennis Gilbert" and "Omar Lopez" are the same person.

41. On or about March 9, 2015, Mr. Marks spoke over the telephone and on behalf of Direct Capital to Mrs. Robertson's husband to collect an alleged debt from Mrs. Robertson.

42. During the telephone call, Mr. Marks said Direct Capital was processing a fraud claim against Mr. Robertson for writing a bad check to repay a payday loan.

43. Upon information and belief, John Doe 6 uses "Paul Marks" as a fictitious name in connection with his work with Direct Capital.

44. Mrs. Robertson's husband informed Mr. Marks that Mrs. Robertson was a victim of identity theft and that she does not owe the payday loan.

45. Mrs. Robertson does not owe any alleged debt that Direct Capital sought to collect from her.

46. As of the date of this complaint, Mrs. Robertson has never received any written statement from Direct Capital containing each of the following:

    a. the amount of the alleged debt;

    b. the name of the creditor to whom the alleged debt is owed;

    c. a statement that, unless Mrs. Robertson disputed the debt within thirty days of receiving the written statement, Direct Capital would assume the debt to be valid;

    d.    a statement that, if Mrs. Robertson disputed the debt in writing within thirty days of receiving the written statement, Direct Capital would obtain verification of the debt and mail the verification to Mrs. Robertson; and

    e.    a statement that, upon Mrs. Robertson's written request within thirty days of receiving the written statement, PRG would provide the name of the original creditor, if different than the current creditor.

## General Allegations as to PRG

47. Some time prior to September 30, 2014, PRG was engaged to collect a debt allegedly owed by Mrs. Robertson.

48. Alternatively, some time prior to September 30, 2014, PRG purchased a debt allegedly owed by Mrs. Robertson.

49. At all relevant times, PRG and its agents acted under the direction of John Doe 7.

50. Upon information and belief, John Doe 7 established the policies, procedures and practices of PRG in his capacity as an owner, operator and/or manager of PRG.

51. On or about September 30, 2014, PRG communicated with Mrs. Robertson for the first time.

52. That first communication was a telephone call by Jane Doe 1, who identified herself as "Karen Atwater" and who called Mrs. Robertson on behalf of PRG to collect an alleged debt from Mrs. Robertson.

53. Mrs. Robertson does not owe the alleged debt that PRG sought to collect from her.

54. As of the date of this complaint, Mrs. Robertson has never received any written statement from PRG containing each of the following:

    a.  the amount of the alleged debt;

    b.  the name of the creditor to whom the alleged debt is owed;

    c.  a statement that, unless Mrs. Robertson disputed the debt within thirty days of receiving the written statement, PRG would assume the debt to be valid;

    d.  a statement that, if Mrs. Robertson disputed the debt in writing within thirty days of receiving the written statement, PRG would obtain verification of the debt and mail the verification to Mrs. Robertson; and

    e.  a statement that, upon Mrs. Robertson's written request within thirty days of receiving the written statement, PRG would provide the name of the original creditor, if different than the current creditor.

## General Allegations as to High Point

55. Some time prior to October 8, 2015, High Point was engaged to collect a debt allegedly owed by Mrs. Robertson.

56. Alternatively, some time prior to October 8, 2015, High Point purchased a debt allegedly owed by Mrs. Robertson.

57. At all relevant times, High Point and its agents acted under the direction of John Doe 8.

58. Upon information and belief, John Doe 8 established the policies, procedures and practices of High Point in his capacity as an owner, operator and/or manager of High Point.

59. On or about October 8, 2015, High Point called Mrs. Robertson and/or Mrs. Robertson's husband for the first time.

60. Since October 8, 2015, High Point called Mrs. Robertson and/or Mrs. Robertson's husband on at least seven other occasions to collect the alleged debt.

61. On at least one of those occasions, Mrs. Robertson's husband spoke to Jane Doe 2, who identified herself as "Felicia Thomas" and who sought on behalf of High Point to collect an alleged debt from Mrs. Robertson.

62. Mrs. Robertson does not owe the alleged debt that High Point sought to collect

from her.

63. As of the date of this complaint, Mrs. Robertson has never received any written statement from High Point containing each of the following:

   a. the amount of the alleged debt;

   b. the name of the creditor to whom the alleged debt is owed;

   c. a statement that, unless Mrs. Robertson disputed the debt within thirty days of receiving the written statement, High Point would assume the debt to be valid;

   d. a statement that, if Mrs. Robertson disputed the debt in writing within thirty days of receiving the written statement, High Point would obtain verification of the debt and mail the verification to Mrs. Robertson; and

   e. a statement that, upon Mrs. Robertson's written request within thirty days of receiving the written statement, High Point would provide the name of the original creditor, if different than the current creditor.

**COUNT I – FDCPA, 15 U.S.C. § 1692 *et seq.* (All Defendants)**

64. Mrs. Robertson incorporates the preceding allegations by reference.

65. At all relevant times, each defendant – in the ordinary course of its business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

66. Each defendant is a "debt collector" under the FDCPA, 15 U.S.C. §1692a(6).

67. At all times relevant to this complaint, each defendant sought to collect a "consumer" debt from Mrs. Robertson.

68. Each defendant's actions to collect an alleged debt from Mrs. Robertson violated the provisions of the FDCPA including, but not limited to, the following: 15 U.S.C. §§ 1692d; 1692e; 1692f and 1692g.

69. Mrs. Robertson suffered damages as a result of these violations of the FDCPA.

### COUNT II – Michigan Occupational Code, as alternative to claims under the Michigan Collection Practices Act (All Defendants)

70. Mrs. Robertson incorporates the preceding allegations by reference.

71. Each defendant is a "collection agency" as that term is defined in the Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

72. Mrs. Robertson is a debtor as that term is defined in M.C.L. § 339.901(f).

73. Each defendant's actions to collect from Mrs. Robertson violated the MOC, including, but not limited to, the following: M.C.L. §§ 339.915 and 339.918.

74. Mrs. Robertson suffered damages as a result of these violations of the MOC.

75. These violations of the MOC were willful.

### COUNT III – Michigan Collection Practices Act, as alternative to claims under the Michigan Occupational Code (All Defendants)

76. Mrs. Robertson incorporates the preceding allegations by reference.

77. Each defendant is a "regulated person" under the Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251(g)(xi).

78. Each defendant's actions to collect from Mrs. Robertson violated the MCPA, including, but not limited to, the following: M.C.L. § 445.252.

79. Mrs. Robertson suffered damages as a result of these violations of the MCPA.

80. These violations of the MCPA were willful.

## Demand for Jury Trial

81. Mrs. Robertson demands trial by jury in this action.

## Demand for Judgment for Relief

82. *Accordingly, Mrs. Robertson requests that the Court grant:*

    a.  *Actual damages for items including emotional distress, mental anguish, frustration, humiliation, and embarrassment.*

    b.  *Statutory damages.*

    c.  *Treble damages.*

    d.  *Statutory costs and attorney fees.*

                                Respectfully Submitted,

                                LYNGKLIP & ASSOCIATES
                                CONSUMER LAW CENTER, PLC

                                By: /s/ Carl Schwartz
                                Carl Schwartz (P-70335)
                                Attorney for Robin Robertson
                                24500 Northwestern Highway, Ste. 206
                                Southfield, MI 48075
                                (248) 208-8864
                                Carl@MichiganConsumerLaw.Com

Dated: November 18, 2015