UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

ROBIN ROBERTSON,

     Plaintiff,

 -vs-

PINNACLE ASSET GROUP, LLC,
*et al*.,

     Defendants.

Case No. 2:15-CV-13446
Hon. Avern Cohn
Magistrate Judge: Mona K. Majzoub

## <u>MOTION FOR ATTORNEY'S FEES AND COSTS</u>

For the reasons set forth in the accompanying brief in support, Robin
Robertson requests that the Court grant this petition for attorney's fees in the
amount of $29,832.50 along with non-taxable costs in the amount of $739.82.

Respectfully Submitted,

By:  s/ Sylvia S. Bolos
Sylvia S. Bolos P78715
Ian B. Lyngklip P47173
LYNGKLIP & ASSOCIATES,
CONSUMER LAW CENTER, PLC
Attorney for Robin Robertson
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075

Dated: July 1, 2019

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

ROBIN ROBERTSON,

     Plaintiff,

  -vs-

PINNACLE ASSET GROUP, LLC,
*et al*.,

     Defendants.

Case No. 2:15-CV-13446
Hon. Avern Cohn
Magistrate Judge: Mona K. Majzoub

## <u>BRIEF IN SUPPORT OF</u><br><u>MOTION FOR ATTORNEY'S FEES AND COSTS</u>

### <u>Issue Presented by Motion</u>

*Whether Ms. Robertson is entitled to an award of attorney's fees and*

*costs reasonably incurred in litigating the matter to judgment.*

### <u>Most Appropriate Authority</u>

#### <u>FEDERAL RULES</u>

Fed.R.Civ.P. 54(d)(2)

#### <u>STATUTES</u>

FDCPA, 15 U.S.C. §1692k
MOC, M.C.L. §339.916

1

## Introduction

Robin Robertson, as the prevailing party on her Motion for Default Judgment (R.92 and R.93) brings this motion under F.R.Civ.P. 54(d) and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k for an award of attorney's fees in the amount of $29,832.50 and non-taxable costs in the amount of $739.82. Counsel has taken great care throughout this litigation to delegate tasks to staff billing at lesser rates, has reviewed and downward adjusted the time billed, and has been careful to avoid any unnecessary efforts in the prosecution of this matter.

With that as prologue, the time spent prosecuting this case arose largely from one major factor, Defendants hid themselves behind a barrier of PO boxes and false names rendering service time-consuming and expensive. The inability to identify and locate defendants resulted in motions for alternate service, amendments to the complaint and extensions of the Court's summons.

Thus, after nearly four years of litigation, and more than 70 docket entries, two amendments of the complaint (R.3 and R.16), numerous requests for summons extensions and alternate service, and ultimately Default Judgment in her favor, Ms. Robertson brings this motion after successfully resolving all claims in her favor.

## Summary of Request

Lyngklip & Associates ActionStep........................................................... $29,832.50
Non-Taxable Costs.......................................................................................... $739.82
========
Total .................................................................................$30,572.32

2

1.    **Background**

    a.    *Nature of Action*

This fee petition follows entry of judgment in favor Ms. Robertson for her claims pursuant to the Fair Debt Collection Practices Act ("FDCPA") and the Michigan Occupational Code ("MOC"). On May 28, 2019, Plaintiff's Counsel appeared for the Hearing on the Motion for Default Judgment. (R.91.) None of the Defendants appeared or otherwise responded. (R.92.) On June 3, 2019, the Court granted Plaintiff's Motion, finding that Ms. Robertson had successfully pled and established valid claims under the FDCPA and MOC. (R.92, See also R.93.)  The Court awarded Ms. Robertson $1,000.00 in statutory damages and $50,000.00 in actual damages pursuant to the FDPA, and $150,000.00 in statutory treble damages pursuant to the MOC – a total award of $201,000.00. (R.93.) Ms. Robertson requests an award of attorney's fees and costs as the prevailing party pursuant to the FDCPA, 15 U.S.C. § 1692k and MOC M.C.L. § 339.916.

    b.    *Core Allegations of the Complaint.*

When Ms. Robertson filed her second amended complaint on May 22, 2017, there were a total of 28 Defendants named. (R.16.) Over the course of the following year, Ms. Robertson completed the necessary service and discovery and dismissed more than half of those Defendants for lack of service, settlement (R.67 and R.88) or wrong party served.

On June 4, 2018, Ms. Robertson filed her motion for default judgment

against the *then* remaining 13 Defendants: (1) Pinnacle Asset Group, LLC, (2) Michael Mancone, (3) Keon D Roman, (4) Lajarcis Gordon, (5) Focus Gold Financial Corp., (6) Michael McCoy, (7) Collectors Group, (8) Consumer Financial Solutions, (9) Direct Capital Associates, LLC, (10) Channer LLC, (11) Jerome Davis, (12)  Felicia Thomas, and (13) High Point Asset, Inc. (R.74.) On February 13, 2019, Ms. Robertson filed an *Amended* Motion for Entry of Default Judgment against those same 13 Defendants. (R.78.)

At core, Ms. Robertson alleged that these Defendants operated a common-partnership and repeatedly made harassing calls to locate, disparage, and threaten her. They made these calls to Ms. Robertson (R.89-2), her husband (R.89-3), and her daughter (R.89-4).  And even though she repeatedly told them she did not owe the debt, they continued to make abusive phone calls to her, threaten her, harass and embarrass her.  And despite her multiple requests that they produce supporting documentation to allow her to identify and isolate how the alleged debts came to be associated with her to stop all the abuse, her reasonable requests were ignored.

On March 6, 2019, Defendants Channer LLC and Jerome Davis filed their Motions to Set Aside Default and responded to Plaintiff's Motion for Default Judgment.  (R.82 and R.83.)  On March 19, 2019, Ms. Robertson filed her Reply

4

brief in support of her Amended Motion for Default Judgment and Responded to their Motion to Set Aside. (R.84 and R.85.) On March 20, 2019, the Court noticed the Hearing for both Plaintiff's Motion for Default Judgment (R.78) and Channer LLC's and Jerome Davis's Motion to Set Aside (R.82) for May 1, 2019 and later rescheduled it to May 15, 2019. (R.86 and R.87.)  Prior to the Hearing, Channer LLC and Jerome Davis produced a spreadsheet containing Ms. Robertson's personal identifiers associated with an alleged payday loan that she never borrowed.  Shortly before the Hearing, Channer LLC and Jerome Davis resolved the matter with Ms. Robertson and on May 13, 2019, filed a Joint Notice of Settlement with the Court (R.88) and withdrew their Motion to Set Aside (R.90). On July 1, 2019, Plaintiff dismissed related and released party Direct Capital Associates, LLC (R.94) and the Parties submitted to the Court the Stipulated Order of Dismissal of Channer LLC and Jerome Davis for entry.

Accordingly, on May 13, 2019, Ms. Robertson filed a *Second Amended* Motion for Default Judgment as to the other ten remaining Defendants, *only*. Plaintiff's Counsel has reduced all of the billed time attributable to the Dismissed Defendants to zero, to the best of her abilities.  Plaintiff's Counsel has also not sought recovery of taxable or non-taxable costs attendant to dismissed parties.

5

### c.   *Service of Process and Default.*

The docket makes clear the challenge under which Ms. Robertson labored to identify, locate, and serve the Defendants. They systematically used aliases, PO boxes and private website registries to alienate themselves from litigation and service.  All told, and primarily only after the Court granted multiple extensions of summons, alternate service, and discovery, Defendants' efforts to avoid and evade service caused Ms. Robertson thousands of dollars and 30 months to unmask and track the down. A brief history of service of process follows:

On January 22, 2016, Ms. Robertson effectuated service of process upon Pinnacle Asset Group, LLC through its registered agent, Attorney Raymond Stilwell. (R.12.)

Not until more than a year later, in June 2017, was Ms. Robertson able to serve Michael Mancone[1] (R.26), Keon Roman[2] (R.27), Lajarcis Gordon (R.31), and Consumer Financial Solutions (R.32). On July 26, 2017 and July 31, 2017, respectively, Ms. Robertson effectuated service of process of Felicia Thomas

---

[1] On June 7, 2019, Michael Mancone called the undersigned's offices, left a voicemail, and sent an email conceding his awareness of the instant matter and receipt of the docket entries throughout Plaintiff's prosecution of this matter.

[2] Keon D. Roman affidavit filed on September 18, 2017 and executed by him on September 12, 2017 confirming his awareness of the instant matter.

(R.39) and High Point Asset, Inc. (R.40).

And more than nine months later, on March 30, 2018, Ms. Robertson was able to serve Focus Gold Financial Corp., Michael McCoy[3], and Collectors Group. (R.62-R.64.)

The record establishes that due to Defendants' efforts to conceal their identities and locations, but for the extensions of summons, open discovery, and permitted alternate service, and through the use of the attendant discovery tools utilized and described below, Plaintiff could not have effectuated service at all.

### d.   *Private Investigators*

Plaintiff's Counsel attempted to curb costs by investigating the Defendants independently, to no avail.  While the cost-burden of hiring a private investigator initially appeared prohibitive, ultimately On the Lookout Investigations had at its disposal systems and databases to identify and locate the defendants sooner, thus reducing the litigation time-burden. Especially where Plaintiff's Counsel had already been granted multiple extensions, the cost-benefit analysis militated in

---

3 On July 28, 2017, Plaintiff's Counsel emailed attorney Edmund J. Green (representing Michael McCoy in an unrelated matter, *Chex Systems, Inc. v. Direct Horizon*), and requested that he accept service of process for Michael McCoy.  On July 31, 2017, Michael McCoy called the undersigned, conceded awareness of the instant litigation and his deliberate attempts to avoid service.

favor of hiring On the Lookout Investigations to identify and locate the most concealed and obdurate Defendants.  And as the record establishes, Ms. Robertson was not able to serve the majority of the Defendants without On the Lookout Investigations' efforts.

In June 2017, On the Lookout Investigations provided a comprehensive report for each of the following Defendants, (1) Collectors Group, (2) Consumer Financial Solutions, (3) Felicia Thomas, (4) Focus Gold, (5) Keon Roman, (6) Lajarcis Gordon, (7) Michael Mancone, (8) Michael McCoy, and (9) High Point at a cost of $55.00 per report, a total cost of $495.00[4]. (See R.95-9.)

In early July 2017, On the Lookout Investigations conducted an additional hour of research to identify and locate Felicia Thomas at a cost of $95.00.  (See R.95-10.) Due to the common nature of her name and her communications with the undersigned counsel, Plaintiff's Counsel commissioned an additional 3 hours of investigation by On the Lookout Investigations to verify and confirm the correct Felicia Thomas was located and served at an additional cost of $285.00.  (See R.95-11.)

---

[4] Plaintiff has submitted a Bill of Taxable Costs to the Clerk of the Court which included the private investigation costs referenced in this motion.

Ultimately, the private investigator was necessary to bringing this matter to default judgment and ensuring the validity of that judgment.

### e.   *Third Party Discovery*

Also, essential to identifying and locating the necessary parties responsible for Ms. Robertson's harms were several dozen subpoenas issued to third-party telecommunication companies, internet domain companies, and PO Box entities. Plaintiff's Counsel served subpoenas upon dozens of entities to discover the account holder information for the websites, phone numbers, and addresses at issue, including:

| Category | Amount | Attorney Comments | Reference |
|---|---|---|---|
| Third Party Fees | $ 20.00 | Level 3 Communications Subpoena Production Request for account holder information of (855) 966-3768, (855) 325-1775, (844) 595-6277, and (855) 589-0614. Pre-payment Request. | Exhibit 2 |
| Third Party Fees | $ 97.00 | Verizon Subpoena Production Request for account holder information of (866) 398-4633 and (866) 398-4634.  Invoice 2018221338. | Exhibit 3 |
| Third Party Fees | $ 35.00 | AT&T Subpoena Production Request for account holder information of (404) 606-7842. Invoice 228384. | Exhibit 4 |

| Third Party Fees | $ 75.00 | Vonage Subpoena Production Request for account holder information of (855) 794-6700. Invoice 41. | Exhibit 5 |
|---|---|---|---|
| Third Party Fees | $ 75.00 | Vonage Subpoena Production Request for account holder information of (855) 325-1775. Invoice 42. | Exhibit 5 |
| Third Party Fees | $ 49.82 | GoDaddy Subpoena Production Request for account holder information of www.highpointassetinc.com domain name. | Exhibit 6 |
| Third Party Fees | $ 97.00 | Verizon Subpoena Production Request for account holder information of vschifano@verizon.com email address. Invoice 2016222399. | Exhibit 7 |
| Third Party Fees | $ 97.00 | Verizon Subpoena Production Request for account holder information of (716) 648-5478. Invoice 2016222379. | Exhibit 8 |
| Third Party Fees | $ 97.00 | Verizon Subpoena Production Request for account holder information of (716) 949-8807. Invoice 2016222388. | Exhibit 8 |
| Third Party Fees | $ 97.00 | Verizon Subpoena Production Request for account holder information of (866) 398-4633. Invoice 2016222249. | Exhibit 8 |
| **Total** | **$739.82** | | |

All of the above-referenced subpoenas were necessary to identifying and locating the 10 remaining Defendants.

### f.   *Motions to extend summons, open discovery, and for alternate service.*

On January 28, 2016, Ms. Robertson filed the first Motion to Extend the Time for Service and to Open Discovery. (R.5.) On February 18, 2016, the Court granted her request. (R.6.)

On April 11, 2017, following her investigation, Plaintiff's Counsel moved the Court for leave to file a second amended complaint. (R.14.) On May 8, 2017, the Court granted her request (R.15) and on May 22, 2017, Plaintiff filed the second amended complaint (R.16).  That same day, Plaintiff's Counsel filed a motion to reissue the summons and permit alternate service for several Defendants, including High Point Asset, Inc. (R.17.)  On May 16, 2017, the Court granted her request. (R.20.)

On January 15, 2018, Plaintiff filed a motion to extend the period of service by 60 days and to permit alternate service of Focus Gold Financial Group Corp., Collectors Group, and Michael McCoy.  (R.56.) On March 29, 2018, the Court granted her request. (R.60.)

11

**g.** *Amendments to the Complaint*

Ms. Robertson filed her complaint on September 30, 2015. (R.1.) By November 20, 2015, Ms. Robertson had filed a First Amended Complaint. (R.3.) And by May 22, 2017, Ms. Robertson had filed a Second Amended Complaint. (R.16.) The multiple amendments were necessary due to Defendants' collective use of aliases, PO Box addresses, anonymous website registries, and a string of entity names, some articled, some not. Because of their intentional design to conceal their true identities and locations, Plaintiff was forced to amend the complaint multiple times as she discovered who they were.

**2.** **Ms. Robertson is entitled to an award of reasonable attorney's fees incurred by her Attorney, Sylvia S. Bolos, in the prosecution of this matter.**

**a.** *Purpose and Standard for Attorney Fees Under FDCPA.*

The FDCPA provides for a mandatory award of attorney's fees to a prevailing consumer, *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir.), cert. denied, 515 U.S. 1160, 115 S. Ct. 2613, 132 L. Ed. 2d 856 (1995); *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir. 1989); *Graziano v. Harrison*, 950 F.2d 107 (3rd Cir. 1991). These mandatory fees reflect Congress's intent that the Act be enforced by debtor's counsel acting as private attorneys general, *Graziano, id at 113;* see *DeJesus v. Banco Popular de Puerto Rico*, 918 F.2d 232,

235 (1st Cir. 1990).

At the same time, fee awards should encourage counsel to undertake these types of cases and provide compensation which is commensurate with other types of cases. *Zagorski v. Midwest Billing Servs*., 128 F.3d 1164, 1167; *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993). In so doing, courts generally apply the lodestar method in conjunction with a request for fees, *see e.g., Cruz v. Local Union No. 3*, 34 F.3d 1148, 1159 (2d Cir. 1994); *see Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87-88 (2d Cir. 1998); *Wilner v. OSI Collection Services, Inc.*, 198 F.R.D. 393, 397 (S.D.N.Y. 2001). Courts have observed that "FDCPA plaintiffs 'seek to vindicate important rights that cannot be valued solely in monetary terms.'" *Bogner v. Masari Investments, LLC*, 2010 WL 2595273, (D.Ariz.,2010); *Savage v. NIC, Inc.*, No. 2:08-cv-01780-PHXJAT, 2010 WL 2347028, at *3 (D.Ariz. June 9, 2010) (quoting *City of Riverside*, 477 U.S. at 562).

Applying a rule of proportionality "would make it difficult, if not impossible, for individuals with meritorious [FDCPA] claims but relatively small potential damages to obtain redress from the courts." *City of Riverside*, 477 U.S. at 578. The mandated payment of attorney's fees under the FDCPA serves a punitive purpose. *Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir.2000).

13

**b.** *The Court's fee determination under the Lodestar standard.*

The starting point for this calculation of a reasonable attorney's fees award "should be the determination of the fee applicant's 'lodestar,' which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his [or her] court-ascertained reasonable hourly rate." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir.2000)(citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "The trial court's exercise of discretion is entitled to substantial deference because the rationale for the award is predominately fact-driven." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir.2008). "This deference 'is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

**c.** *Plaintiff is entitled to recover additional non-taxable costs as a component of the "Attorney's Fee" award.*

In addition to the fees in this case, the Court should award additional "non-taxable" costs as a component of fees for Plaintiff's counsel. *Bryant v. City of Chicago*, 200 F.3d 1092, 1100 n. 3 (7th Cir.2000); *Save Our Cumberland Mountains, Inc. v. Hodel*, 826 F.2d 43, 54 (D.C.Cir.1987) ("We believe that it

14

would be unduly restrictive to find that neither the general term 'costs of litigation' nor the term 'attorney's fees' includes incidental expenses of attorneys that are routine to all litigation and routinely billed to private clients."); *Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir.1984) (travel expenses). Case law permits these awards under the FCRA, which permits recovery of attorney's fees pursuant to a "fee shifting" statute. *Grove v. Wells Fargo Financial California, Inc.*, 606 F.3d 577 (9th Cir. 2010).

Under fee shifting statutes, a prevailing plaintiff is not limited to recovery of those costs that would ordinarily be recovered under the federal rules. As such non-taxable costs would include time for paralegals and staff. *Missouri v. Jenkins*, 491 U.S. 274 (1989), as well as travel and other ordinary expenses that "are typically charged to paying clients by private attorneys." *Davis v. City of San Francisco*, 976 F.2d 1536, 1556 (9th Cir.1992).

To identify and locate the Defendants, and as this motion establishes, Plaintiff's Counsel sought account holder information for the phone numbers, websites, and PO Box addresses at issue from several third parties. To secure production in response to her requests and related directly to these ten remaining Defendants, Plaintiff's Counsel expended $739.82 to Level 3 Communications

(Exhibit 2), Verizon Wireless (Exhibits 3, 7, and 8), AT&T (Exhibit 4), Vonage (Exhibit 5), and GoDaddy (Exhibit 6).  Accordingly, the Court should permit these additional non-taxable costs of $739.82.

**3.    The Court should award $29,832.50 in fees to Ms. Robertson's Counsel as a prevailing Plaintiff.**

A calculation of the number of hours reasonably expended can involve consideration of three issues, (1) whether the lawyer actually worked the number of hours claimed, (2) whether the work performed was sufficiently related to the points on which the plaintiff prevailed, and (3) whether the attorney used poor judgment in spending too many hours on some part of the case or by unnecessarily duplicating the work of co-counsel. See *Coulter v. State of Tennessee*, 805 F.2d 146, 150-51 (6th Cir. 1986).

In the course of this litigation, Attorney Bolos and the rest of the Lyngklip & Associates staff have expended over 264 hours to resolve this case. The attached billing records provide a chronological listing of those hours, identifying the staff member who expended the time and the amount of time expended.  (Exhibit 9 -- Adjusted Billing Records).  The work performed was necessary, reasonably related to the file, directed at moving the matter through the legal system expeditiously.

16

**a.** ***The Court should grant fees to the prevailing attorney based upon their market rates for the attorney's and support staff involved.***

The party seeking an award of fees bears the burden of demonstrating that the request is reasonable. See *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1176 (6th Cir. 1990). To determine a reasonable hourly rate for attorney's fees, the courts look to the prevailing market rate for similar services of local attorneys with comparable skill, experience, and reputation. *Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). In determining compensation, the Court should look to the fair market value of the services provided by the attorney. The hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience, and skill of the individual attorney. *Northcross v. Bd. of Educ.*, 611 F.2d 624, 638 (6th Cir. 1979). Against this backdrop, the Court should grant fees at a rate commensurate with the attorney's own actual rate for comparable work. *Jeffboat, LLC v. Director, Office of Workers' Compensation Programs*, 553 F.3d 487, 490 (7th Cir.2009).

In this case, the billing rate for Attorney Sylvia Bolos reflects her customary billing rate and falls well within the range of customary rates for consumer attorneys in Michigan. (Exhibit 12, Pages 88-91 and 257-264 -- NACA Attorney

Fee Survey, Excerpts).  Ms. Bolos, along with her firm, Lyngklip & Associates represented Ms. Robertson through the successful prosecution of her case. Few attorneys regularly handle plaintiff's consumer law claims in Michigan, as evidenced by the attorney enrollment for the State Bar of Michigan Consumer Protection Section (Exhibit 13 -- State Bar of Michigan Section Membership Demographics, Excerpts; See Also, Exhibit 14 – State Bar of Michigan Billing Rate Summary, Excerpts; Exhibit 12, Pages 88-91 and 257-264 – NACA Attorney Fee Survey, Excerpts). Also evidenced by the Michigan membership roster with the National Association of Consumer Advocates ("NACA"), which is the trade group for consumer protection attorneys.  (Exhibit 15 – NACA Michigan Attorney Roster, Excerpts). Fewer still handle these claims in Federal Court with any degree of regularity.  Whereas, Attorney Bolos and the Lyngklip & Associates staff feature a highly focused practice, limited exclusively to the protection of consumers through litigation under several federal and state consumer protection statutes, almost exclusively in Federal Court.  (Exhibit 16 -- Declaration of Attorney Bolos; Exhibit 17 -- Declaration of Attorney Lyngklip; Exhibit 18 -- Declaration of Paralegal Branco).

Under the direction of Attorney Lyngklip, the Lyngklip & Associates firm

18

fosters an environment of continued legal education, community involvement and participation in the broader legal community. *Id*. For the first 30 months of their employment, each staff member is required to participate in the Lyngklip & Associates weekly in-house training seminar[5] given by Attorney Lyngklip. His Declaration discloses a long history of providing training to attorneys seeking to learn consumer law. Additionally, Attorney Lyngklip has over the years conducted training for opposing counsel, judges, and the Members of the Michigan House of Representatives. He has appeared numerous times before this Court and believes that this Court is otherwise familiar with his expertise in consumer protection.

Further, each staff member is also required to attend and participate in training offered by consumer-oriented organizations as well as local bar associations and paralegal associations. (Exhibit 16 -- Declaration of Attorney Bolos; Exhibit 18 -- Declaration of Paralegal Branco). Also, each attorney is also required to attend and participate in nationally sponsored webinars, conferences, lectures, and boot camps – more than 75% of which is consumer-oriented. (Exhibit

---

5 Seminar topics include but are not limited to: Federal Rules of Civil Procedure, Local Rules, ECOA, FDCPA, TCPA, FCRA, EFTA, discovery, depositions, evidentiary hearings, trial prep, pre-litigation, retainers, settlement documents, and service of process.

16 -- Declaration of Sylvia S. Bolos).

Attorney Bolos' Declaration establishes that she has been a licensed Attorney in Michigan since 2014 and joined the Lyngklip & Associates firm in 2016. Prior to joining Lyngklip & Associates, she maintained an accomplished and successful career in Accounting, Budget, Program Management, Finance and Banking. Immediately prior to transitioning to the practice of law, she spent seven years within the Department of Defense at TACOM in Warren, Michigan. During her tenure there, she held several senior-level positions, including her Accounting position within the Managerial Accounting Office ("MAO") for the command, as well as her Budget Analyst position within the Program Executive Office ("PEO") for the Ground Combat Systems ("GCS") program. She was also integral to the Base Realignment and Closure ("BRAC") of the Managerial and Budget Accounting Office of the Rock Island Arsenal, including the temporary duty ("TDY") assignment to the Rock Island Arsenal to personally draw down operations and reassign them to TACOM. Prior to her employment with the Department of Defense, Ms. Bolos also spent three years as an in-house Accountant to several privately held corporations, both in Michigan and California. And prior to that, she spent five years in the Banking Industry. All told, her

experience apart and aside from litigation, spanning 16 years in total, has uniquely prepared her and developed within her a skillset tailored to litigation of consumer protection matters.

As Ms. Bolos continues to hone her expertise in consumer-oriented litigation, she has also earned speaking engagements at national conferences, including the Fair Debt Collection Practices Act Conference of 2016, 2017, and 2018, as well as the upcoming Consumer Rights Litigation Conference of November 2019. Further, she has also been recruited as a member of the steering committee responsible for the Fair Credit Reporting Act Track at the May 2020 National Association of Consumer Advocates conference. In 2018, Ms. Bolos began her term as a co-chair to the EDMI Federal Bar Association's Rise Committee. And the State Bar of Michigan has also published her article on collecting FDCPA Judgments. (Exhibit 16 – Declaration of Attorney Bolos).

Of the 264 hours billed, across ten staff members, 75 hours were billed by four paralegals, 14 hours were billed by one summer law clerk, nearly 6.8 hours were billed by Senior Attorney Lyngklip, and 167.80 hours were billed by four associate attorneys, including Attorney Bolos. Attorney Bolos billed 127.90 of those hours, constituting nearly 80% of all time billed by Attorneys and 48% of all

time billed across all staff members. She has reduced her total billing time by 66.30 hours, a 52% reduction in her time billed. She has also reduced the total billing time on the file by 140.05 hours, a net 53% reduction.

The accompanying fee survey of consumer lawyers reveals that the rate requested by Attorney Bolos ($300) is well within the range for practitioners throughout the Midwest for an attorney of similar experience. (See Exhibits 12, 13, and 14). That survey does not - and likely could not - account for the credentials of Plaintiff's counsel which are well beyond those of the average practitioner. Attorney Bolos' Declaration, as well those of Attorney Lyngklip and Senior Paralegal Branco, along with the fee survey support the requested billing rates. (Exhibit 19 – Lyngklip & Associates Billing Rate Table). Accordingly, Ms. Robertson requests that the Court grant fees at the nominal billing rates set forth in this petition.

      **b.**     ***The lodestar calculation yields a reasonable attorney's fee in light of Defendants' tactics to avoid detection and evade service.***

The refusal of Defendants to evade service and ignore this litigation has caused Plaintiff's Counsel to expend a great deal of time and money on bringing this matter to a close. In support of this motion, Plaintiff's Counsel has provided a

detailed log of all of the time billed on this file, in chronological order, and identified the biller of that time.  (Exhibit 9 – Adjusted Billing Records).  That exhibit reflects an appropriate distribution of work allocated to Staff and supervised by the managing attorney on the file, Sylvia Bolos. These exhibits also establish that Senior Attorney Lyngklip was an infrequent biller on the file and took on an advisory role appropriate for his experience and higher billing rate.  The requested rates are reasonable and appropriate in light of the extraordinary efforts by which Defendants disguised their identities and locations. Accordingly, the Court should find the adjusted billed time of 124.05 hours reasonable and award a lodestar amount consistent with the billing rates requested.

**4.**     <u>**Plaintiff's Counsel has made appropriate adjustments to reflect billing discretion to render the bill reasonable.**</u>

While the reasonable rate multiplied by the reasonable hours renders a presumptively correct fee, case law yet requires Counsel to exercise billing discretion. *Hensley*, *supra*. In cases such as these that extend over multiple court appearances, numerous motions to extend summons, and for alternate service and early discovery, the resulting bill – as well as the fee litigation – may take extraordinary time. And while the interest of maintain an appropriate balance of

time expended on the fee petition (see *Coulter, supra*, limiting fees expended on the fee petition), given the time spent on the file and to ensure the Court has before it a well itemized and audited record, Plaintiff's Counsel has engaged in line-by-line review of the billing in this case.

Of the total hours billed of 264.10 hours, Plaintiff identified 140.05 hours attributable to dismissed Defendants, duplication of efforts, and unnecessary work and accordingly reduced the requested billable time by 140.05 hours to 124.05 hours – netting a 53% reduction of the time billed. (Exhibit 9 – Adjusted Billing Records). Further, Plaintiff's Counsel has provided a detailed analysis by Position and Staff Member of the billed time reduction (Attorney Bolos' billed time reduced by 52%, Attorney Lyngklip's billed time reduced by 84%, See Exhibit 10 – Adjusted Billing Records, Percent Reduction by Position and Staff). And Plaintiff's Counsel has provided a detailed analysis by Staff Member of the each staff members total time billed to the file and the percentage of their time billed to the file (Attorney Bolos' billed time of 127.90 represented 48% of the time billed, Attorney Lyngklip's billed time of 6.80 hours represented 3% of the time billed, See Exhibit 11 – Adjusted Billing Records, Percent Time Billed by Staff Member).

Plaintiff's discretionary billing amounted to a reduction in the amount billed

from $63,955.00 to $29,832.50.  Plaintiff's billing reduction reflects appropriate billing discretion and provides the Court a reasonable check on the overall amount of this petition.

## Conclusion

In this case, Plaintiff's Counsel expended more than 264 hours in bringing this case forward to a conclusion – not including time for preparation of this brief or anticipated time at the attorney fee hearing.  Plaintiff's Counsel has engaged in a line-by-line review of the billing records and appropriately reduced the billed time for purposes of this fee petition down to 124.05 hours. Accordingly, Ms. Robertson requests entry of $29,832.50 in attorney's fees and $739.82 in non-taxable costs.

Respectfully Submitted,

By:  s/ Sylvia S. Bolos
Sylvia S. Bolos P78715
Ian B. Lyngklip P47173
LYNGKLIP & ASSOCIATES,
CONSUMER LAW CENTER, PLC
Attorney for Robin Robertson
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
SylviaB@MichiganConsumerLaw.Com

Dated: July 1, 2019

25

## CERTIFICATE OF SERVICE

I certify that on July 1, 2019, I will electronically file the document above with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all Appeared Parties. Further, I caused a copy of the above filing to be served on the following Parties by the means indicated:

| Party | Manner |
|---|---|
| Pinnacle Asset Group, LLC<br>4476 Main Street, Ste. 120<br>Amherst, NY 14221 | First Class U.S. Mail |
| Michael Mancone<br>20 Carla Lane<br>Buffalo, NY 14224 | First Class U.S. Mail and by Electronic mail to:<br>pinnacleassetgroup@gmail.com |
| Keon Roman<br>204 Brinkman Ave<br>Buffalo NY 14211 | First Class U.S. Mail |
| Lajarcis Gordon<br>2011 Jasmine Parkway<br>Alpharetta, GA 30022 | First Class U.S. Mail |
| Focus Gold Financial Corp<br>148 Church Street<br>East Aurora, NY 14052 | First Class U.S. Mail |
| Michael McCoy | Electronic mail to:<br>MichaelJamesMcCoy@gmail.com |
| Collectors Group<br>c/o Michael McCoy | Electronic mail to:<br>MichaelJamesMcCoy@gmail.com |
| Consumer Financial Solutions<br>c/o Incorp. Services, Inc.<br>2000 Riveredge Parkway NW, Ste. 885<br>Atlanta, GA 30328 | First Class Mail |
| Felicia Thomas<br>298 Dodge Street<br>Buffalo NY 14208 | First Class U.S. Mail |
| High Point Asset, Inc.<br>148 Church Street<br>East Aurora, NY 14052-1804 | First Class U.S. Mail |

Respectfully Submitted,


By:  s/ Sylvia S. Bolos
Sylvia S. Bolos P78715
Ian B. Lyngklip P47173
LYNGKLIP & ASSOCIATES,
CONSUMER LAW CENTER, PLC
Attorney for Robin Robertson
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
SylviaB@MichiganConsumerLaw.Com

Dated: July 1, 2019